FILED

2006 Nov-13  AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:06-CV-1134-RDP** |
| | } | |
| **DARRELL G. WILLIAMS; WANDA F. WILLIAMS,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

The court has before it Plaintiff Nationwide Mutual Insurance Company's ("Nationwide") Motion for Summary Judgment against Defendants Darrell G. Williams and Wanda F. Williams (collectively the "Williams Defendants") (Doc. # 27) filed September 19, 2006. Pursuant to the court's briefing scheduling for summary judgment motions, the Williams Defendants' opposition was due by October 10, 2006. (Doc. # 19, at Appendix II). As of the date of entry of this order, no opposition has been filed and therefore, the Plaintiff's unopposed motion for summary judgment is properly under submission. For the reasons outlined below, the court finds that the motion is due to be granted.

## I. Procedural History

This action was commenced on June 9, 2006, by the filing of Nationwide's declaratory judgment complaint against Scott Gober, individually ("Gober"), Scott Gober Construction, LLC ("SGC"), and the Williams Defendants. (Doc. # 1). Nationwide's complaint seeks a declaration regarding its duties to indemnify and defend Defendant Gober and SGC, who have been sued by the Williams Defendants in the underlying action, *Darrell G. Williams and Wanda F. Williams v. Scott*

*Gober, Scott Gober Construction Company, LLC, et al.*, CV-05-1118, pending in the Circuit Court of Etowah County, Alabama.

The Williams Defendants are the only defendants remaining in this lawsuit. Gober was dismissed from this action on August 24, 2006 after properly notifying this court that he had filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama pursuant to Chapter 7 of the Bankruptcy Code. (Doc. # 20). On September 11, 2006, Plaintiff was granted a default judgment against SGC because that entity failed to answer or otherwise defend the arguments located in Nationwide's complaint. (Doc. # 26). The default judgment entered against SGC declared that Nationwide is not obligated to defend nor indemnify SGC in the underlying action. (Doc. # 26).

Nationwide now moves for summary judgment in its favor in the form of a declaration that it owes no duty to indemnify the Williams Defendants in the underlying lawsuit on the grounds that the their underlying complaint does not implicate coverage under the general business liability policy, Contractors Policy No. 77 AC 738-703-3001, issued to Gober and SGC because (1) there are no allegations of "bodily injury" or "property damage" caused by an "occurrence" and (2) several relevant policy exclusions defeat coverage.

## II.    Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II.    Relevant Undisputed Facts[1]

Nationwide issued SGC an insurance policy, which was effective from February 25, 2004 until February 25, 2005, and then renewed until February 25, 2006.   (Doc. # 28, Ex. 3). The insurance policy issued by Nationwide to SGC provides "business liability" coverage which is described as follows:  "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies."  (Doc. # 28, Ex. 3). The policy further states that, "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION – SUPPLEMENTAL PAYMENTS." (Doc. # 28, Ex. 3). Specifically, the policy provides that insurance applies:

(1)    To "bodily injury" or "property damage" only if:

    (a)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (b)    The "bodily injury" or "property damages" occurs during the policy period.

(2)    To:

    (a)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

    (b)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

---

[1] If facts are in dispute, they are stated in the manner most favorable to the non-movants. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

(3)    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

(4)    "Property damage" that is loss of use of tangible property that is not physically injured will be deemed to occur at the time of the "occurrence" that caused it.

(Doc. # 28, Ex. 3). Certain exclusions to coverage and definitions of the relevant terms further outline the scope of policy coverage.  (Doc. # 28, Ex. 3).[2]

The underlying lawsuit filed by the Williams Defendants asserts that Gober and SGC failed to properly construct a residence.  (Doc. # 28, Ex. 4).  The complaint asserts claims for breach of contract, fraudulent misrepresentation, negligence and/or wantonness, negligent and/or wanton construction, civil conspiracy, and breach of warranty.  (Doc. # 28, Ex. 4).  The Williams Defendants seek damages including: (1) losing "the use of their monies;" (2) incurring expenses to cure defects to make the home habitable as a residence; (3) incurring future expenses to repair defects in the home; (4) losing the quiet enjoyment of their residence; (5) suffering severe mental anguish and emotional distress; and (6) losing the value of their home. (Doc. # 28, Ex. 4).

## III.    Applicable Substantive Law and Discussion

As outlined below, the court finds that Nationwide has no duty to indemnify the Williams Defendants for any actions taken by Gober and SGC as alleged in the underlying action for the following reasons:  (1) none of the events giving rise to the breach of contract, fraudulent misrepresentation, negligence and/or wantonness, negligent and/or wanton construction, civil conspiracy, and breach of warranty claims fall within the definition of "occurrence" in the policy;

─────────────────────

[2] The court has not reproduced all of those provisions here, but instead will refer to them as necessary in the body of this opinion.

(2) SGC and Gober's actions giving rise to the claims for breach of contract, negligence and/or wantonness, negligent and/or wanton construction, fraudulent misrepresentation, and breach of warranty are excluded from coverage by the "property damage" and "professional services" policy exclusions; and (3) because the claim for civil conspiracy is an intentional tort, SGC and Gober are not entitled to a defense and/or indemnity as the intentional acts of the insured are excluded from coverage.

### A.    The Definition of Occurrence

It is undisputed that the policy at issue in this case limits coverage to an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Doc. # 28, Ex. 3).  Not only have the Williams failed to allege in their complaint they suffered any damage as a result of "an accident, including continuous or repeated exposure to substantially the same general harmful conditions (Doc. # 28, Ex. 4)," but the relevant case law makes clear that the Williams' claims for faulty workmanship and defective construction cannot constitute an "occurrence" necessary to trigger coverage under this policy.  *See Berry v. South Carolina Ins. Co.*, 495 So. 2d 511, 512 (Ala. 1985) (finding no coverage for lawsuit by homeowners against contractor for breach of contract, misrepresentation, and breach of warranty because homeowners failed to allege that "any damage to the existing structure [was] a result of 'an accident, including continuous or repeated exposure to conditions'" and "all of the 'damages' [were] related to the work done pursuant to the contract"); *United States Fidelity & Guar. Co. v. Warwick Development Co., Inc.*, 446 So. 2d 1021, 1023 (Ala. 1984) (finding that "faulty workmanship" and use of non-complying materials did not constitute an "accident" for purposes of the policy's definition of an "occurrence" which is identical to the one in this case).

5

Therefore, based upon the authority of *Berry* and *Warrick*, the court finds that the conduct described by the Williams Defendants in their underlying complaint falls outside of the definition of "occurrence" and thus, outside of the scope of coverage. Accordingly, Nationwide is due to have summary judgment granted in its favor.

**B.     Property Damage and Professional Services Exclusions**

In addition, for the reasons stated below, the court also finds that the policy exclusions for "Damage to Your Product" and "Professional Services" bar coverage for the Williams Defendants' claims in the underlying lawsuit.

First, the policy excludes coverage for property damage to the contractor's "product" arising out of the contractor's "work," which includes "[w]ork or operations performed by you or on your behalf . . . [and] [m]aterials, parts, or equipment furnished in connection with such work or operations," including "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'" (Doc. # 28, Ex. 3, at 12). Alabama courts construing similar contract provisions have held that such provisions exclude coverage for damage to the actual product or work of the insured. *See, e.g., USF&G v. Bonitz Insulation Co. of Ala.,* 424 So. 2d 569, 573 (Ala. 1982) (finding no coverage for contractor as to property owner's claim that the contractor negligently installed a roof because the roof was "work" performed by the insured).

In this case, the Williams Defendants allege that SGC and Gober's construction of their home was faulty and defective, and they make no allegations of damage to any other property other than the home itself. (Doc. # 28, Ex. 4). Based upon both Alabama precedent and the unambiguous policy definitions of "work" and "product," the court finds that all of the property damage alleged in the underlying lawsuit arose out of SGC and Gober's "work" and constitutes damages to their

6

"product."  Accordingly, the Williams Defendants' underlying claims against SGC and Gober are excluded from coverage under the "Damage to Your Product" policy exclusion.

Second, the court finds that the policy exclusion for claims relating to, or arising out of, SGC and Gober's rendering or failure to render "professional services" bars coverage for the claims in the underlying lawsuit.   Although the policy does not specifically define "professional services," it specifies that those services include:  (1) the "[p]reparing, approving, or failing to prepare or approve […] drawings, opinions, reports, surveys, […] designs or specifications"; and (2) "[s]upervisory, inspection or engineering services."  (Doc. # 28, Ex. 3).  Here, the Williams Defendants' claims arise out of SGC and Gober's professional contractor services, including ascertaining the objectives for the house, formulating an "opinion" on how the house could or should be constructed, hiring the necessary subcontractors for constructing the house, obtaining any reports, surveys, designs or specifications necessary to construct the house, and constructing the house based upon SGC and Gober's analysis of all this information. (Doc. # 28, Ex. 4).

Based upon the plain language of the policy, the court finds that the services rendered by SGC and Gober to the Williams Defendants fall within the policy exclusion for "professional services."  *See also Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517 (D. Del. 2001)(finding that general contractor "was directly responsible for supervising and inspecting the work of the subcontractor to ensure that the home was built properly and in accordance with the terms of the contract" and that his failure to adequately render a "professional service" was not covered under his contractor's policy); *Vogelsang v. Allstate Ins. Co.*, 46 F. Supp. 2d 1319, 1323 (S.D. Fla. 1999)(finding that claims against insured attorney arising out of insured's representation in the divorce proceeding were excluded as "professional services" because the attorney's "liability

7

flowed directly from [the] performance of a professional activity" and did not stem from "the commercial aspect of his business"); *Allstate Ins. Co. v. Sellers-Bok*, 942 F. Supp. 1428, 1433 (M.D. Ala. 1996)(adopting Black's Law definition of "professional services" as services relating to "vocation or occupation requiring special, usually advanced, education, knowledge, and skill" and finding that psychiatrist's report and clinical observations constituted "professional services" within the meaning of the policy exclusion).  Accordingly, for this alternative reason, Nationwide is due summary judgment on the issue of whether it owed a duty to indemnify SGC and Gober in the underlying action with respect to the claims asserted by the Williams Defendants.

### C.    Intentional Tort Exclusion

Finally, the court finds that Nationwide has no duty to indemnify SGC and Gober with respect to their civil conspiracy claim the Williams Defendants have asserted in the underlying action.  This is because any injury arising from such a claim is excluded from coverage as "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."  (Doc. # 28, Ex. 3, at 2).  In order to prevail on their conspiracy claim, the Williams Defendants must show that SGC and Gober (1) agreed with at least one co-conspirator, (2) to accomplish an unlawful end, and (3) *intended* to have that unlawful end brought about.  *First Bank of Childersburg v. Florey*, 676 So. 2d 324 (Ala. Civ. App. 1996).  Because a claimed conspirator must have "actual knowledge of, and the intent to bring about, the object of the claimed conspiracy," *Florey*, 676 So. 2d at 327, SGC and Gober could not have committed the tort of civil conspiracy without "expecting or intending" to cause injury to the underlying plaintiffs.  *See also Ladner and Company, Inc. v. Southern Guaranty Ins., Co.*, 347 So. 2d 100 (Ala. 1977) (finding no duty to defend a civil conspiracy claim brought by property owners against a construction company for injuries suffered by them when their homes

flooded because the claim was based upon conduct expected or intended from the standpoint of the insured). Accordingly, because the civil conspiracy claim brought by the Williams Defendants is excluded from the policy's coverage, Nationwide is not obligated to indemnify them for any conspiratorial conduct by SGC and Gober.

## V.      Conclusion

For the reasons outlined above, Plaintiff's unopposed motion for summary judgment is due to be granted. The court will enter a separate order declaring that Plaintiff Nationwide owes no duty to indemnify Darrell and Wanda Williams for any actions by Scott Gober or Scott Gober Construction Company, LLC under the liability policy issued to Scott Gober Construction Company, LLC.

**DONE** and **ORDERED** this \_\_\_\_13th\_\_\_\_ day of November, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE